BRUGNOT *vs.* LOUISIANA STATE MARINE AND FIRE INSURANCE COMPANY.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

Under the averments that the goods to the amount mentioned in the policy of insurance, were not lost, and that the insurer suspected and had reason to suspect, that the pretended loss was altogether fraudulent, evidence will be received to prove that the plaintiff had *not* the goods when the loss occurred, and that it was fraudulent.

This is an action on a policy of insurance. On the 29th October, 1835, the plaintiff took out a fire policy of insurance from the office of the defendants, at a premium of two and a half per cent., on sundry articles, consisting of flour, bread, wood, furniture, carpenters' tools, and a bakery with its machinery, etc., situated on the corner of Girod and St.

Charles streets, in New-Orleans, valued at five thousand eight hundred and fifty dollars, according to an annexed statement.

The plaintiff alleges, that on or about the 23d of November, 1835, nearly all the property covered by the policy, was destroyed by fire, which also consumed the buildings in which it was contained, and without any fault or negligence on his part ; that soon after the loss, he notified the insurers thereof, and presented them an account of it, amounting to five thousand three hundred and seventy-two dollars, and demanded payment, which they refused. He prays judgment for this sum, with interest, from the date of the loss, and damages for the detention of the same.

The defendants pleaded a general denial, and denied specially that property to the amount claimed, was destroyed; they averred that they were more strict in exacting a rigid compliance with the conditions of the insurance, because they suspect and believe, and had reason to suspect and believe, that the pretended loss for ·which indemnity is claimed, is altogether fraudulent.

Upon these issues and pleadings the cause was submitted to a jury.

The plaintiff called witnesses to prove his account, made and presented to the insurers of his loss.

The defendants offered letters and a correspondence with the plaintiff, in which they notified him his policy was cancelled, and that on surrendering it, the premium would be returned. This was communicated to him the 13th November, and he replied the next day, declining it. On the night of the fire, (23d November, 2 o'clock,) the plaintiff was at the lake with a friend.

The defendants offered these letters, together with a fragment of a letter contained in the plaintiff's reply, written by one Joseph Guigues, who kept a little cabaret shop opposite. These documents were objected to by the plaintiff's counsel, on the ground that they were not admissible under the averments in the answer, and they were excluded from the jury. The defendants' counsel took his bill of exceptions,

EASTERN DIST.
*May*, 1838.

BRUGNOT
*vs.*
LA. STATE
MARINE AND
FIRE INS. CO.

and annexed the letters, to show that he offered them to prove that the plaintiff had not the goods mentioned in the policy when the loss occurred, and that it was fraudulent. Exceptions were taken to the charge of the judge, and his refusal to charge the jury as required by the defendants.

The jury returned a verdict for the amount of the plaintiff's demand, and from judgment rendered thereon, the defendants appealed.

*Roselius*, for the plaintiff.

1. The bill of exceptions relied on, is taken to the refusal of the judge to permit the defendants to give in evidence their own letter to the plaintiff, his answer thereto, and a fragment of another letter written by an individual named Guigues. The object for which these letters were offered, was to prove fraud ; the objection was, that there is no specific allegation of fraud in the answer. A general averment that the defendants suspect and believe the loss to be fraudulent, will not authorize the introduction of testimony to prove facts, from which they may imagine fraud ought to be inferred. The facts which are charged to constitute fraud ought to be set forth, so that the adverse party may come prepared to meet and join issue upon them. The very end and object of pleading would otherwise be defeated. This is not technical, but reasonable and just. In the case of Madam Colson *vs.* The Consolidated Association, this very point was decided by this court. See that case, not yet printed. Besides, there is no allegation of fraud ; a suspicion and belief on this subject is only argumentatively stated, as a reason for insisting on a more rigid compliance with the conditions of the 8th article of the policy.

2. But, if the court should be of opinion, that the letters referred to, are admissible in evidence, under the pleadings, an examination of them will satisfy the court, that if they had been admitted, it would not have produced a different result. This court has frequently decided that when the error of the judge *a quo*, could have no effect on the merits, the case will not be remanded. "A presumption at least

should be raised, that in consequence of the error, the deci-
sion on the merits was different from what it would otherwise
have been. *Caulker* vs. *Banks*, 3 *Martin*, *N. S.*, 541.
*Morgan* vs. *Mitchell*, 3 *Ibid.*, 582. *Miller* vs. *Pierce*, 3 *Ibid.*,
284. *Lowe* vs. *Korner et al.*, 4 *Louisiana Reports*, 74.

*Conrad*, for the defendants.

1. The court erred, in refusing to permit the defendants to read to the jury the correspondence between the parties relative to the insurance.

This correspondence was offered to prove that the loss was fraudulent. The ground on which it was rejected, was, that the answer contained no allegation of fraud. The answer, if it does not state in positive terms that the loss was fraudulent, certainly states the belief of the defendants of that fact, and that it was on that ground they had refused payment, and contains substantially an allegation of fraud. Besides, this court has repeatedly decided, that evidence will not be rejected on the ground that it did not strictly correspond with the pleadings of the party against whom it is offered; was sufficiently apprised that it would be produced, and was not surprised by its production. *Ralston* vs. *Barclay*, 6 *Marshall's Reports*, 650. *Ory* vs. *Winter*, 4 *Martin*, *N. S.*, 267. *Ives* vs. *Easton*, 6 *Louisiana Reports*, 16.

2. In this case the plaintiff was perfectly aware, even before the loss occurred, that he was suspected of having set fire to the property insured. His own letter to the company, proves that he was aware of their suspicions. The company afterwards formally notified him, that strict preliminary proofs would be required, and the answer repeated it, and alleged that the defendants had reason to believe, and did believe the loss was fraudulent. Under these circumstances, it cannot for a moment be supposed, that the plaintiff was surprised by the production of evidence of fraud, and ought not to complain that the defendants were disposed to charge him with the most serious offence known to the laws, in as guarded a manner as possible, supposing it possible that

EASTERN DIST.
May, 1838.

BRUGNOT
vs.
LA. STATE
MARINE AND
FINE INS. CO.

when the cause was tried, he might possibly succeed in establishing his innocence.

3. The court erred, in charging the jury that the plaintiff was not bound to prove that goods of the description and, value of those insured, were lost by the fire.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff in this case sues to recover the value of certain effects in his tenement, consumed by fire in the night, while he was absent from his dwelling and at Lake Pontchartrain. The defence of the insurers is a denial that property to the amount claimed by him has been consumed by fire, and an averment, that the plaintiff has totally failed and neglected to comply with the conditions of the policy, particularly the eighth article, and that the defendants were more strict than usual in exacting a rigid compliance, because they suspect and believe, and have reason to suspect and believe that the said pretended loss was altogether fraudulent.

Most of the bills of exception taken during the progress of the trial, have a direct reference to this plea. They are worthy of attentive consideration, as they only tend to give this court a glimpse at the mystery which envelopes this transaction. Among other things it appears, that the defendants offered in evidence a correspondence between the president of the office and the plaintiff, together with a fragment of a letter from one Guigues to the plaintiff, previously to the fire, in order to prove that the plaintiff had not the goods mentioned in the policy, when the loss occurred, and that the loss was fraudulent. The letters are before us, annexed to the bill of exceptions. They were rejected on the ground that they were inadmissible, under the allegations in the defendants' answer.

It appears from this correspondence, that about ten days before the fire, the defendants requested the assured to come forward and cancel the policy, and take back the premium. He answers that he would do so if he did not know the motive which dictated that demand; but he begins by a

peremptory refusal, and then says, that the determination of the company was suggested by one Guigues, who had made against him the denunciation, he had threatened ; that the writer had made to him, verbally, a proposition, to set fire to his house for five hundred dollars, and on his refusal, had-had the folly to repeat the proposition in writing, as will appear by a fragment of his letter, which the plaintiff's momentary indignation had prompted him to tear up. He adds, that he did not communicate it immediately to the company, because he considered it the emanation of a diseased brain, which his own refusal would suffice to restrain.

This curious fragment inclosed in the plaintiff's letter and dated two days previously, contains no proposition to set fire to the house for five hundred dollars, but a peremptory demand for the payment of that sum before twelve o'clock, or a written answer before one, for the security of both, (pour votre suraté et la mienna,) and he adds, "since you are determined to act according to your own notions, I have decided to follow mine, and to risk myself in denouncing you if you do not accede to my demand."

We make no comments on these extraordinary productions. They are before us only for the purpose of deciding whether they were properly excluded from the knowledge of the jury, which was empanelled to try the cause between the parties.

We are of opinion that the court erred. There is a denial of any loss by misfortune, as contemplated by the policy, and substantially an allegation of fraud, sufficient, we think, to authorize a rigid scrutiny into all the circumstances of the case.

As the verdict must be set aside, it is unnecessary to examine the other bills of exception, or to inquire how far the proofs offered show a compliance with the eighth article of the policy.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided and reversed, that

*Eastern Dist.*

*May, 1838.*

BRUGNOT
*vs.*
LA. STATE
MARINE AND
FIRE INS. CO.

Under the averments, that the goods, to the amount mentioned in the policy of insurance, were not lost, & that the insurers suspected, and had reason to suspect, that the pretended loss was altogether fraudulent, evidence will be received to prove that the plaintiff had *not* the goods when the loss occurred, and that it was fraudulent.

EASTERN DIST.
June, 1838.

STINSON ET AL.
vs.
SCHOONER
PENNSYLVANIA.
the verdict be set aside, and the case remanded for a new trial, with instructions to the judge not to refuse to receive in evidence, the correspondence mentioned in the bill of exceptions, and that the plaintiff pay the costs of this appeal.